**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 26 2012, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STANLEY F. WRUBLE, III**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAIRIUS REDDING, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 71A03-1107-CR-294 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jerome J. Frese, Judge
Cause No.  71D03-1008-FB-103

**January 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Dairius Redding appeals the trial court's decision to admit the results of a buccal swab DNA analysis at trial and its finding of aggravating factors at sentencing. Specifically, he contends that the trial court abused its discretion by admitting the DNA evidence at trial and that the trial court erroneously considered his genetic predispositions in determining his sentence. We find that it was not an abuse of discretion to admit the buccal swab because there was a valid warrant to collect the sample. We also find that the trial court did not consider improper aggravating factors in sentencing Redding to an executed sentence of twelve years. We therefore affirm.

**Facts and Procedural History**

On April 6, 2010, sixteen-year-old Redding was at his aunt's South Bend house for a family gathering. Many of his cousins were there, including thirteen-year-old B.B, his aunt's daughter. Redding and some of his male cousins were playing video games while B.B. went into her mother's bedroom to play games on the computer. Redding left the room where he was playing video games and entered his aunt's bedroom. He told B.B. to pull down her pants; she complied and bent over the bed. Redding stood behind her and subjected B.B. to anal intercourse. He then left the room and went back to playing video games.

B.B. went across the street and told her mother's godmother what happened. The godmother told B.B.'s mother what happened, and B.B. was immediately taken to Memorial Hospital. She was examined by a nurse and a physician, and a tear was observed on her anus, consistent with anal intercourse. The hospital collected B.B's

underwear and swabs of her mouth, anus, and a dried secretion found on one of her buttocks.

On April 14, 2010, Redding gave a voluntary interview to a South Bend Police Department detective with his legal guardian present. He claimed that he had adjusted B.B.'s underwear because it was showing above her pants but denied that he had any inappropriate contact with her. He also volunteered that he had not touched B.B.'s anus. Police and child-protective officials were informed of the incident, and a petition was filed in St. Joseph juvenile court alleging that Redding was a delinquent. On June 24, 2010, after a hearing on the request for a warrant, the juvenile court magistrate ordered Redding to provide a DNA exemplar, and the order was signed by the magistrate on that day. State's Ex. 11. However, the order was not signed by the juvenile court judge until June 27. Redding provided a DNA sample pursuant to the order through a buccal swab on June 25. The DNA given by Redding matched that found on B.B.'s underwear, anus, and buttock.

The State charged Redding with Class B felony child molesting, and his case was waived from juvenile court into the St. Joseph Superior Court Number 3. A jury trial took place from November 8, 2010, through November 12, 2010. Redding objected to the admission of the DNA evidence on the grounds that the State had not shown judicial authorization to collect the sample from him since the order was not dated until two days after the buccal swabs were collected. A foundation hearing was held outside the presence of the jury, and the trial court overruled Redding's objection and admitted the evidence.

3

Redding chose to testify at trial. He claimed that he had masturbated before entering his aunt's bedroom to look for tissues with which to clean himself. He then said he noticed that B.B.'s underwear was visible so he told her to pull up her pants. When she did not comply, Redding testified that he ordered her to stand up and adjusted her underwear and pants himself. He claims B.B. told him to stop, "but before I stopped I realized I had a portion of . . . my seminal material in her panties." Tr. p. 572. Redding also testified that he had not provided this information to the police because, "That was my business." *Id.* at 589.

The jury found Redding guilty of Class B felony child molesting. A sentencing hearing took place on June 17, 2011. During this hearing, the trial court judge commented on Redding's upbringing and the difficulties he had experienced in his life and questioned if some of Redding's behavior was due to his genetic makeup. However, the trial court did note that any genetically-based difficulties that Redding had experienced were not his fault and considered them to be mitigating factors. Sent. Tr. p. 54. After reviewing the appropriate aggravating and mitigating factors, the trial court sentenced Redding to eighteen years at the Indiana Department of Correction with six years suspended and a fifteen-year probationary period beginning from the date of sentencing. *Id.* at 54-55.

Redding now appeals.

**Discussion and Decision**

Redding makes two arguments on appeal: (1) whether the trial court abused its discretion by admitting evidence identifying Redding by his DNA and (2) whether the

trial court abused its discretion in finding inappropriate aggravating factors during Redding's sentencing hearing.

## I. DNA Evidence

Redding contends that the trial court abused its discretion by admitting evidence at trial that identified him by his DNA. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Redding contends that the trial court abused its discretion in admitting the DNA evidence because its collection was the product of an unconstitutional search, in violation of his Fourth Amendment rights.[1] The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." The Fourth Amendment is made applicable to the States via the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Evidence

---

[1] As noted in the State's brief, "Redding makes no claim under Article 1, Section 11 of the Indiana Constitution and has therefore waived review under that provision." Appellee's Br. p. 18 n. 12.

5

obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial. *Id.* at 648-60.

Redding argues that the collection of his DNA was an unconstitutional search without a warrant in violation of the Fourth Amendment. However, we find that there was a valid warrant in place, satysfiying the Fourth Amendment and making it unnecessary for us to address the issue of whether the buccal swab was a search.

A warrant need not be signed by a judge in order to be valid. "[T]he Fourth Amendment of the United States Constitution . . . [that] prohibit[s] unreasonable searches and seizures [does not] require the signing of a search warrant or the service of a copy of the warrant on the person whose property is to be searched." *State v. Smith*, 562 N.E.2d 428, 429 (Ind. Ct. App. 1990), *reh'g denied*. In *Smith* we held that the signing of a warrant was purely a "ministerial act," the absence of which would not invalidate the warrant. *Id.* While the Indiana Code provides a signature line for a judge on the warrant form, that signature is not required to validate the warrant, *id.*, nor is there any particular time frame within which the warrant must be signed. *See Cutter v. State*, 646 N.E.2d 704, 712 (Ind. Ct. App. 1995), *trans. denied*. As long as a judge or magistrate, including a juvenile magistrate, *Dike v. State*, 642 N.E.2d 281, 283 (Ind. Ct. App. 1994), *reh'g denied*, found probable cause and intended to issue the warrant, his or her signature is not an essential part of the warrant. *Smith*, 562 N.E.2d at 429.

As a result, the order requiring a DNA sample from Redding, procured at a hearing in juvenile court and signed by a juvenile magistrate on June 24, 2010, was a valid warrant. The order was not signed by a juvenile judge until June 27, 2010, but the

6

order was effective as soon as the magistrate intended it be effective, specifically June 24, 2010. Therefore, when Redding submitted to the buccal swab on June 25, 2010, the day after the magistrate issued the order, he was complying with a valid warrant, satisfying all Fourth Amendment requirements.

However, even if the decision to admit the DNA evidence was an abuse of discretion, we will not reverse the trial court if the ruling constituted harmless error. *Decker v. Zengler*, 883 N.E.2d 839, 845 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. We have held that "any error in admission of evidence is harmless if the same or similar evidence has been admitted without objection." *Edwards v. State*, 730 N.E.2d 1286, 1289 (Ind. Ct. App. 2000). In this case, Redding testified at trial that his semen was on B.B., saying that "before I stopped I realized I had a portion of . . . my seminal material in her panties." Tr. p. 572. Defense counsel not only did not object to this testimony, but even elicited the testimony on direct examination of Redding. Since there was no objection, evidence that the DNA found on B.B. belonged to Redding was properly before the jury, so any error in admitting the results of the DNA test would be harmless.

## II. Sentencing

Redding also contends that the trial court abused its discretion in sentencing him by considering an improper aggravating factor. Specifically, Redding argues that the trial court improperly considered how his genetic predisposition might affect his risk of recidivism.

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* We review the presence or absence of reasons justifying a sentence for an abuse of discretion, but we cannot review the relative weight given to these reasons. *Id.* at 491.

At the sentencing hearing, before pronouncing the sentence, the trial court judge spoke to Redding about what he saw as the challenges facing Redding in the future. The judge said:

> You have some problem with aggressive traits toward others, to stand in opposition to others, to having a problem with accepting authority of other people over you. There are a lot of problems that they see as traits in you that some of them may be some genetic predisposition – what your personality makeup comes from the traits you got implicitly when you were born. But a lot of that may be that you didn't have a very fair upbringing.
>
> But here you are faced with it, and that's going to make it very hard for you to reshape yourself and realize that you can't engage in anger and assaultive behavior . . . .

Sent. Tr. p. 48-49.

Redding argues that this observation by the judge shows that Redding's genetic makeup was considered an aggravating factor in making the sentencing decision. However, the judge was attempting to apprise Redding of the potential challenges he may face in the future; these comments were not made to set out Redding's genetic makeup as an aggravating factor. Rather, while sentencing Redding, the trial court judge seemed to refer to Redding's genetic makeup, if anything, as a mitigating factor. The judge said "and although I've told you what I think are mitigators, that is, things that are not your

8

fault that really should be taken into account as difficulties that were visited on you . . . ." *Id.* at 54. The judge then went on to state the aggravating factors that he considered in his sentencing decision, which included Redding's criminal history and his careful picking of victims. *Id.* Nowhere in the explanation of the aggravating factors considered did the trial court judge mention Redding's genetic makeup.

Finally, we note that while Redding has not waived the review of his sentence, *see* Appellate Rule 49(B) ("Any party's failure to include any item in an Appendix shall not waive any issue or argument"), he has hampered our review of this issue by not providing a full record, leaving out documents relied upon by the trial court judge in determining his sentence, such as the pre-sentence investigation and psychosexual report from a therapeutic center. Without a full record, we are not fully informed about the factors that the trial court judge considered when making his sentencing decision. However, despite this hampered review, we hold that the trial court did not consider Redding's genetic makeup to be an aggravating factor in giving him an executed sentence of twelve years.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.